Good morning, Your Honor. I would like to try to reserve two minutes for rebuttal. Let's see if that happens. Good morning to all of the honorable judges. In removal proceedings against Francisco Javier Reyes-Corado, the immigration judge made five or six very specific factual findings to support a grant of asylum. First, he found that Mr. Reyes' uncle, Simon, had been disappeared during the Guatemalan Civil War, and that Mr. Reyes' father, Noe, was blamed for that because of the political rivalry between the brothers, as was the family of Noe Reyes' sister, Catalina, who was politically allied with Noe. This is a family feud case kind of in a sense, isn't it? Do I understand it correctly that your client is mostly afraid to go back because he's afraid that if he goes back, he will be killed by his relatives because they think he's going back to kill them? Is that what this is all about? They think that they do think that, and he's testified that. And that's why he's afraid that they'll kill him first because they think he's going to kill them. Yes. How does this fit into the whole scheme as on account of? Well, the Board says that that's retaliation, but I disagree. It's illogical to call that retaliation because Mr. Reyes' uncle was killed. They're afraid that he's going to retaliate, but that's not persecution on the basis of the social group. But their fear of retaliation is based exclusively on the fact that Mr. Reyes is Noe Reyes' son. They have no other reason to fear him. He has made no threat against them. He has never wronged them. There's no evidence of such. But there's a slight disconnect there, though, between what's really going on and what you're saying, because he's not afraid they're going to kill him because he's a member of a family, because they think he's going to kill them. It's a little short. The facts seem to be a little short of your argument. I disagree. Again, under matter of or not matter of, under persimova, perusimova, the Court says one central reason means a but-for causation, essentially. So what's your best case that says where it's a family feud? That what do you consider to be your best case to support your proposition? I think the best cases are looking at Navas v. INS and Ventura v. INS, where they did employ the sort of guilt by association, where your family members held a political belief and you were – But here they just hate each other. That belief was attributed to you. They just hate each other, which isn't necessarily uncommon to families. I mean, most people don't escalate it to the point of killing each other, but they hate each other. It's not really a political dispute. They hate each other. And the immigration judge did not rule that it was based on political opinion, although the animosity between the families is rooted in political differences. The immigration judge ruled that this was family-based persecution. In other words, particular social group persecution. And the fact remains that if Mr. Reyes were anyone else who had done nothing to his cousins to antagonize them or threaten them, he would not be persecuted. He's persecuted because he is Mr. Noe Reyes's son. And that establishes the sort of but-for causation of social group. And I don't think there's really any debate whether family is a social group. You're not conceding that it's not a social group. But I don't see that we have any other case exactly like yours supporting it. And to go where you want to go would really open the door to families that just don't get along, which has never been a basis for asylum. Or cat relief or withholding. Well, I don't see a reason. It's the political opinion problem that causes the family not to get along. Again, you have to look at the totality of the circumstances in asylum cases, and all of those things should be considered together. In this particular case, this animosity between the families is rooted in political difference. Furthermore, I'm not sure that it's untenable to have a family feud be the basis of an asylum case, because it's not just the fact that one family might try to harm the other, but it also is that the applicant has to establish that the government would not or could not protect them from such harm. And Mr. Reyes has also done that. He's proved that with his country conditions reports, the immigration judge found there's no reason to believe that the Guatemalan authorities could or would protect Mr. Reyes. Well, but isn't there a problem? The record doesn't contain much in terms of the police awareness of the nature of this, of the crimes, of the killings. I mean, they knew of the killings, obviously, but what is the evidence that they knew that the basis of the killing was based on some kind of persecution or conflict within a social group? The killings didn't happen 13 years apart, 1990 and 2003. Right. Well, it is in a very, very small town, in a rural town, where that sort of thing would almost certainly be noticed. Furthermore, the awareness question really is more applicable to the question of acquiescence with regard to CAT relief. Well, persecution has to be based, there has to be some state action. State action, but it's for unwillingness or inability to control. It's not the same acquiescence you have to have for CAT. But you have to have an awareness before you can have the unwillingness and inability to control, don't you? I don't believe so. If you've proven that criminal activity like this is conducted with impunity within the country, and that's what the country conditions reports suggest, that neither the judiciary nor the law enforcement officials themselves are willing or able to prevent this sort of harm. When we say this sort of harm, murder is one thing, but murder based on family retaliation is something else, isn't it? Doesn't there have to be an unwillingness to control this kind of harm, not just any general crime? I'm not aware of any precedent that ties the government's inability or unwillingness to control the harm to the particular harm sought. The nexus requirement applies only between the persecution feared and the claimed group or protected class. Well, essentially we would have to, we'd have to find here, you're essentially arguing there's two distinct social groups, one being the lineal descendants of Simone Reyes and the other being the lineal descendants of Noe Reyes, right? That's correct, Your Honor. Okay. So that's what we have to, we've got to buy for you to prevail. Yes. And I believe that that is not a controversial issue in this circuit, that the fact that one social group or two social groups can be considered as part of one larger social group does not prohibit consideration of whether persecution exists between those two groups. What about the relocation question about his ability to reasonably and safely relocate if returned? The only evidence is that the geographic size of his, of Guatemala? The geographic size and that Mr. Reyes does not, did not know of any place that he could go. We testified that he did not know of any place he could go to find safety in Guatemala. On that point, however, it's important to note, the immigration judge found past persecution in this case. And with that finding, the burden is on the government. But is that before it was reversed? Before it was reversed, correct. All right. So, but now we're looking at, we have to give deference to factual findings, but if persecution is, giving all deference to factual findings, if persecution is a de novo and a legal finding, then that's what we're looking at here. And the question of whether there was past persecution is a legal ruling. It's the application of established legal standards to an undisputed set of facts. And there really is no You want to take the balance of your time? You're at a minute and a half. I will. In just one second, Your Honor. There is really no dispute of the facts. It's the legal, the application of the law to those facts that are questioned here. And I do think the Court should look at the past persecution issue de novo. And with doing that, if finding that past persecution has been suffered, then the burden is on the government to show that it would be reasonable for Mr. Reyes to relocate. And they have offered no evidence that it would be reasonable for him to do that. And I will reserve my last minute. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Gary Newkirk on behalf of the Attorney General. I believe that this case is as straightforward as the panel's question suggests and that the Board concluded below. It is unfortunate. It's a sad state of affairs. There's a lot of dead bodies. But there is a family feud, and it stems from, it's all about personal retribution. And unfortunately, that's not a basis for asylum. And the Board properly found that there's really no nexus to it. Well, the appellant's arguing, couldn't we find that there's two distinct social groups, the lineal defendants of Simone Reyes and the other of Noe Reyes? I don't think that the Court can find that. The particular social group area of the law, as you well know, is somewhat unsettled. And there's been a lot of decisions on this. Well, can a family be a social group? Yes. Yes, they can. I don't think the government disputes that. So why not two families? Well, it's certainly possible. It's always a circumstance-based analysis. And in this case, though, the only particular social group found by the immigration judge initially was of the Reyes family. And I think right now we're trying to draw a distinction between the two families. And I would – I believe that we should leave that issue to the Board if the Court's inclined to address it. You mean remand it? No, I think this case is disposed of easily on the basis that there's no nexus, even if there is a particular social group. Nexus to what? Nexus to – there's no nexus to anything. Doesn't this whole thing arise out of a political difference of opinion? No, I – Because that's what seems to drive this whole thing in terms of the Civil War. That may have driven the Civil War and the initial feud between Petitioner's father. Right. Correct. But the issue here is it's really an imputed political opinion case. And this Court is – the Ninth Circuit believes that if you're going to find imputed political opinion, you have to establish that the persecutors are actually imputing a political opinion onto the Petitioner himself. And we don't have that here. Well, that's not too hard to find, given the history and how this all evolved and what it led to here. That may not be too hard to find if there were evidence to support that. But the only evidence that we have here is Mr. Reyes-Corrado's testimony that they are out to get him because they think that he's going to be out to get them. And that's not a political opinion. So now it's down to sort of the mob or the cat pills and the coys. I've thought of that reference myself in reading these facts. At least in that situation you have two families. Here we have just basically the one family. So you would concede that the Hatfield-McCoy situation would constitute two social groups? No, I don't believe I would do that. Why not? I mean, you can have two different clans. That's very prevalent in many countries. You can have two different clans, but I don't think that goes to the issue of whether or not they're a particular social group. The particular families could be social groups in that. I mean, the government has not disputed that a family could conceivably be a particular social group. Isn't your argument here that the fear is, the persecution is based on fear of retaliation by Mr. Reyes-Corrado as opposed to his membership or his political beliefs? Yes, that's exactly right. More succinct than I could have said it, yes. What about the unwillingness to control question that I had with counsel? Is awareness irrelevant to that question? I mean, if there's just general unwillingness to control crime without a nexus to this kind of crime here? Well, I think awareness is relevant. We look at all facts that are relevant. But in this case, you have Petitioner's testimony that he didn't, the family didn't report this at all. And I think you have to take that into consideration. It's a significant factor against Petitioner's favor. The other thing is the one chance that they had to go to the government and make them aware, Petitioner's mother declined to do so, in fact, misled them. And so they had the one opportunity to maybe do something, and they didn't go. And I think it would be wrong to sort of credit Petitioner's argument based on his mother's, you know, misleading of the police given their one opportunity to maybe do something about this. But can the Court find unwillingness to control where there's no awareness of the nature of the killings, the purpose of the killings? Yes. I believe that comports with the existing Ninth Circuit precedent that, well, let me make sure I got your question correct. Yeah. You didn't. I didn't. Awareness is an important factor. Is it essential? It is essential, yes. And if the Petitioner, the one seeking to establish that fact, has not established government awareness, that they didn't make the government aware, then that's a problem. And what's the best case that says, of this Court or any Court that says awareness is essential to finding inability or unwillingness? I think in the government's brief, we made reference to Ramzida. Okay. That might be the case that we cited on that point. But the bottom line is, not only do we have just the government not being aware, we have the one opportunity that they could have done something and Petitioner's mother misled them. And that's, I think that's fairly damaging to Petitioner's case and argument. What about the fact that the IJ, as I recall, did make a specific finding on unwillingness or inability to control? I don't know if the, well, the IJ made that finding on the second case after remand that there were. On acquiescence under Catt. On acquiescence, yeah. Didn't on the first. Correct, correct. Is there a problem? He didn't reach the issue of Catt the first time. No, I don't believe so. I think that he appealed to the Board. The Board vacated the basis for the immigration judge's original grant. It goes back to the IJ. And the only remaining issue at that point is a Catt decision. And the IJ denied Catt on that basis. It's all before us now. I'm sorry? It's all before us now. Yes. That's correct. Was there any showing at all, demonstration that the country's laws or customs effectively deprive the Petitioner of any meaningful recourse to governmental protection? No. That's the Ramsitic case. That's the Ramsitic. I don't believe that there was any showing of that in this case. I mean, the government won't dispute that there is violence. And Guatemala is not Pasadena. But that is everybody's problem from Guatemala in that case. And here, again, unfortunately, Petitioner's mother didn't seize the opportunity to at least report the issue. And if they didn't do anything after that report, it would be a completely different case. And what about the fact that the killings took place 13 years apart? Well, I think that it only adds to the hurdle that the Petitioner faces. And the first one occurred in the midst of the Civil War. I think technically the first two occurred. If you 1990 was Simone Reyes, the uncle. 1995 was a cousin. And the accords weren't signed officially until 1996. So I think technically the first two were in the midst of a civil strife. And so there's that issue as well. And if the panel doesn't have any additional questions, then we would submit on the briefs and the arguments made today. We don't appear to. Thank you. Thank you. All right. Do you have a minute? Thank you very much. I would like to just point out that in Raham Zadeh, the holder, that case was clearly distinguishable on its facts, because the country conditions reports in that case actually clearly indicated that the Dutch government did do everything in its power to prevent the sort of harm that was feared. Whereas the case distinguished a prior board precedent in Ray S.A. for a Moroccan woman, where the country conditions reports supported her position that it would have been futile to go to the government and it would have been dangerous for her to do so. So what's the record in this evidence, in this case? The record in this case is that Mr. Reyes testified. The reason none of these crimes were reported is because they feared the government couldn't protect them, and by reporting it, they would incur retaliation. And that would be a basis under the circuit's law to find that this is really rooted in retaliation and not in political opinion or particular social group. But the fact is, in this case, they've done – they haven't created any personal animosity by going to the police and reporting the crimes and trying to get action. In factual support, what corroboration is there for your client's fear that they're going to get him before he gets them? Is this just his statement, or is there anything else that corroborates his fear? It is his statement, it is their threats, and it is his expressed belief that he doesn't – he's not out to get them. His sisters want him to, but he has no interest in it, and he's expressed that. Their threats amplify. What do you mean? When did those happen? What's the evidence of that? They happened up until and including when Mr. Reyes was in removal proceedings before the immigration judge when he requested declarations from his mother and sisters in Guatemala. Shortly after they went to a notary to have those signed, there were new threats made against his life by his cousins. So – Those threats were made to whom? The family? They were sent through, yes, the mother and sister to Mr. Reyes. But is there anything to corroborate his subjective fear that the government wasn't going to do anything and provide any meaningful protection other than his perception? Is there anything in the record at all? The country conditions report is what the immigration judge relied upon. All right. There don't appear to be additional questions, and we've taken you into overtime. Thank you both for your argument. This matter will stand submitted.
judges: Chen, TROTT, CALLAHAN